UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN M.,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | No. EDCV 18-1206 AGR<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff[1] filed this action on June 5, 2018. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 9, 10.) On February 21, 2018, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

## **PROCEDURAL BACKGROUND**

Plaintiff filed an application for disability insurance benefits on December 17, 2014 and alleged an onset date of May 12, 2014. Administrative Record ("AR") 17. The application was denied initially and on reconsideration. AR 17, 95, 106. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On February 10, 2017, the ALJ conducted a hearing at which Plaintiff and a vocational expert ("VE") testified. AR 35-83. On August 22, 2017, the ALJ issued a decision denying benefits. AR 14-27. On May 4, 2018, the Appeals Council denied review. AR 2-6. This action followed.

# II.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements through December 31, 2020. AR 19. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[2] the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine with history of lumbar laminectomy in 1993, lumbar fusion in 1995, cervical fusion in 2004 and cervical fusion hardware removal in 2007; mild bilateral carpal tunnel syndrome; and obesity. AR 19.

The ALJ found that, through the date last insured, Plaintiff has the residual functional capacity ("RFC") to perform light work except that he could lift/carry/push/pull up to 20 pounds occasionally and up to 10 pounds frequently; sit/stand/walk for six hours in an eight-hour workday with a sit/stand option so that he could change positions approximately every 20-30 minutes; occasionally climb ladders, ropes and scaffolds; frequently balance; occasionally perform other postural activities; and frequently

---

[2] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

perform fine and/or gross manipulation bilaterally.  He was restricted from working at unprotected heights; working around moving machinery and other hazards; and performing any overhead work with his upper extremities.  AR 20.  Plaintiff is unable to perform his past relevant work but there are jobs that exist in significant numbers in the national economy that he could perform such as cashier, storage facility rental clerk and plastic parts assembler.  AR 25-26.

### C. Dr. Hatch's Workers Compensation Opinion

Dr. Hatch performed an agreed medical examination on July 11, 2016.  AR 692-767.  Dr. Hatch opined that Plaintiff was precluded from heavy work; prolonged sitting/standing; prolonged positioning of his head in awkward positions; very forceful activities; and prolonged typing/keyboarding/fine manipulation.  Plaintiff could not return to his usual and customary duties as an electrical mechanic.  AR 761.

Plaintiff argues that Dr. Hatch's opinion "clearly differed from the ALJ's own findings/conclusions," specifically as to the restriction against heavy lifting.  (JS at 5, 7.)

The ALJ acknowledged Dr. Hatch's functional restrictions.  AR 23.  Although the ALJ did not expressly assign the weight he gave Dr. Hatch's opinions, this is not necessarily a basis for remand.  *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1981) ("It is true that the ALJ did not recite the magic words, 'I reject Dr. Fox's opinion about the onset date because . . . .' But our cases do not require such an incantation. As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.  It is proper for us to read the paragraph discussing Dr. Pont's findings and opinion, and draw inferences relevant to Dr. Fox's findings and opinion, if those inferences are there to be drawn.").

Contrary to Plaintiff's argument, there is no indication in the ALJ's decision that the ALJ rejected Dr. Hatch's opinions.  An ALJ is required to set forth specific and legitimate reasons supported by substantial evidence in the record only when the ALJ rejects or discounts a physician's opinion.  *See Matthews v. Shalala*, 10 F.3d 678, 680-81 (9th Cir. 1993).  Opinions couched in workers compensation terminology "present an

extra challenge. The ALJ must 'translate' terms of art contained in such medical opinions into the corresponding Social Security terminology in order to accurately assess the implications of those opinions for the Social Security disability determination." *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1106 (C.D. Cal. 2002). "[T]he ALJ's decision need not contain an explicit 'translation.'" *Id.* "In analyzing medical opinions using state workers' compensation terminology, the ALJ 'is entitled to draw inferences "logically flowing from the evidence."'" *Id.* (citation omitted).

The ALJ could reasonably interpret Dr. Hatch's opinion as consistent with his RFC assessment. According to Plaintiff's testimony, his past work required lifting 50 to 100 pounds and being on his feet six hours per day. AR 45-46. Under California workers compensation terminology, "a claimant incapable of performing 'heavy' work may be capable of performing 'light,' semi-sedentary,' or 'sedentary' work. *Desrosiers v. Sec'y*, 846 F.2d 573, 576 (9th Cir. 1988). "None of these three categories" – light, semi-sedentary or sedentary – "is based on strength. Rather, they turn on whether a claimant sits, stands, or walks for most of the day. Each entails a 'minimum of demands for physical effort.'" *Id.* (citing Schedule for Rating Permanent Disabilities, Guidelines for Work Capacity, 1-A (Labor Code of the State of California).).[3] Plaintiff has not shown an inconsistency with the ALJ's RFC assessment of light work. *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (finding ALJ who assessed RFC of light work did not err in relying on opinions that claimant was precluded from heavy work and limited to light work in workers compensation context); *Holloway v. Berryhill*, 2017 U.S. Dist. LEXIS 190103, *11-*12 (C.D. Cal. Nov. 16, 2017) (finding preclusion from heavy work in workers compensation context is not inconsistent with RFC for light work); *Cerritos v. Colvin*, 2016 U.S. Dist. LEXIS 55579, *10 (C.D. Cal. Apr. 25, 2016) (noting prior definition of heavy lifting in workers compensation context meant claimant

---

[3] The Schedule for Rating Permanent Disabilities is issued pursuant to the authority in Cal. Lab. Code § 4660.

could not lift more than 20 pounds but current schedule does not define heavy lifting); *Glass v. Workers' Comp. Appeals Bd.*, 105 Cal. App. 3d 297, 302 n.1 (1980) (noting previous definition of disability precluding heavy work "[c]ontemplates the individual has lost approximately half of his pre-injury capacity for performing such activities as bending, stooping, lifting, pushing, pulling, and climbing or other activities involving comparable physical effort"). Nor is there any apparent inconsistency between Dr. Hatch's other restrictions and the ALJ's RFC assessment limiting Plaintiff to a sit/stand option at least every 20-30 minutes[4] with no overhead work and no more than frequent fine or gross manipulation.

      Plaintiff also complains that the ALJ improperly rejected a 10-pound restriction on his ability to lift/carry/push/pull. The ALJ rejected this restriction in a medical opinion from Dr. Mattar in April 2015 because it was not supported by his clinical findings. AR 25. Dr. Mattar does not explain the basis for his opinion that Plaintiff could return to work with a 10-pound restriction on lifting/pulling/pushing. AR 544. Dr. Mattar reported that Plaintiff was in no apparent distress and his cervical posture was preserved. He had decreased range of motion by 50%. AR 539. The remainder of the examination of the shoulders, elbows, wrists and hands were normal. AR 540-42. Neurovascular testing was normal and motor strength was 4/5. AR 543. Special testing was negative. AR 539-42. The ALJ concluded that Dr. Mattar may have been influenced by Plaintiff's disagreement that he could return to work, which caused Dr. Mattar to refer Plaintiff to another physician. AR 22, 25; *see* AR 544. The ALJ gave partial weight to the opinions of Dr. Sedgh, who opined in May 2015 that Plaintiff was capable of lifting up to 20 pounds occasionally and 10 pounds frequently. AR 24, 437. The ALJ also noted that Plaintiff met with his pain management specialist in 2016 and stated he was able to function with medication. AR 22 (citing AR 803, 809, 815, 821(noting 50% improvement in pain)). The ALJ's reasons for discounting Dr. Mattar's 10-pound restriction was

---

[4] Plaintiff testified that he could sit or stand 15-20 minutes. AR 49.

supported by substantial evidence. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *see also Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

### D. Credibility

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. AR 23.

Second, when an ALJ concludes that a claimant is not malingering and has satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (citation omitted). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id.* (citation omitted).

The ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 23. The ALJ relied primarily

7

on two reasons: (1) objective medical evidence did not support the alleged degree of disability; and (2) inconsistent statements about his level of functioning. AR 21-24.

The ALJ's reasons are supported by substantial evidence. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). This reason is supported by substantial evidence for the reasons discussed above.

The ALJ also identified inconsistencies in Plaintiff's statements about his level of functioning. Plaintiff argues that he had a well paying job as an aviation electrical mechanic for close to 30 years. The ALJ agreed that Plaintiff could not return to his past relevant work, which was classified as medium work. AR 25. However, the ALJ found that Plaintiff's testimony that he spent four to five hours per day lying down or reclining was inconsistent with his statements in the record that he goes out often and drives to get his newspaper and breakfast; goes out to get food and groceries; reads, watches TV and browses the internet; visits with others; and goes to his granddaughter's soccer games. AR 202-05. Contrary to Plaintiff's argument, the ALJ may properly rely on activities of daily living that undermine the severity of the alleged symptoms. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (noting daily activities "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"). The ALJ also noted statements in the record that his symptoms improved 50% with medication, which may be considered in assessing credibility. *See Warre v. Comm'r*, 439 F.3d 1006 (9th Cir. 2006). When substantial evidence supports the ALJ's credibility finding, "we may not engage in second-guessing." *Thomas*, 278 F.3d at 959. Plaintiff has not shown error.

E. **Vocational Expert**

An ALJ may rely on a vocational expert's testimony in response to a hypothetical that contains all of the limitations the ALJ found credible and supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). "A

VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Id.* at 1218; *see also Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017) (quoting *Bayliss*).

Plaintiff argues that the ALJ erred in relying on the VE's testimony that Plaintiff could perform the representative occupations of cashier, storage facility rental clerk and plastic parts assembler. The VE testified that the sit/stand option and overhead reaching is not covered in the Dictionary of Occupational Titles. Her testimony was therefore based on her 35 years' experience "working with employers doing onsite job analysis and job descriptions."[5] AR 67. The VE testified that the cashier position and assembler position has a stool available so a sit/stand option at will would not be a problem. AR 74, 77. The VE eroded the number of jobs for cashier and assembler by 50% to accommodate the sit/stand option. AR 64-65. The VE did not erode the number of storage facility rental clerk jobs because that work is performed mostly in a seated position. AR 65. The ALJ was not required to inquire further. "[A]t least in the absence of any contrary evidence, a VE's testimony is one type of job information that is regarded as inherently reliable; thus, there is no need for an ALJ to assess its reliability." *Buck*, 869 F.3d at 1051.

F. **Grid Rule**

Plaintiff argues that if he were limited to sedentary work, he would be deemed disabled under the medical vocational guidelines ("Grids"). 20 C.F.R. pt. 404, subpt. P, app.2 § 201.12. If he were capable of a full range of light work, he would not be deemed disabled under the Grids. *Id.* § 202.13. Plaintiff contends that he falls between two Grid rules and the ALJ erred in not finding him disabled.

---

[5] Plaintiff argues that the VE's testimony about his ability to perform the job of ticket taker was based on personal experience at movie theaters as opposed to professional observation. Because the ALJ did not include ticket taker as a representative job, the VE's testimony about that job is irrelevant to the analysis.

9

"[W]hen a claimant's exertional limitation fell between two grid rules, the ALJ fulfills his obligation to determine the claimant's occupational base by consulting a vocational expert regarding whether a person with claimant's profile could perform substantial gainful work in the economy." *Thomas*, 278 F.3d at 960 (citing Social Security Ruling (SSR) 83-12). As the Ninth Circuit has described, the pertinent portion of SSR 83-12 provides as follows:

> 2. If the exertional level falls between two rules which direct opposite conclusions, i.e. "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:
>    a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
>    b. On the other hand, if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."
>    c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining vocational base to support a conclusion as to disability. Accordingly, [VE] assistance is advisable for these types of cases.

*Moore v. Apfel*, 216 F.3d 864, 870 (9th Cir. 2000) (quoting SSR 83-12).

Like the claimant in *Moore*, Plaintiff argues that the ALJ should have found that the light work "was so reduced that it was essentially equivalent to the lower category, 'sedentary' work, which would have meant he was classified as 'disabled.'" *Id.* (footnote omitted). Contrary to Plaintiff's argument, the court in *Moore* noted that SSR 83-12

does not mandate a finding of disabled when the higher exertional level is "significantly reduced" but rather mandates the use of a vocational expert. *Id.* at 871. Moreover, even assuming the evidence could support either conclusion (disabled or not disabled), the ALJ's conclusion must be upheld if it is supported by substantial evidence. *Id.*

The ALJ found that Plaintiff could perform the representative jobs of cashier, storage facility rental clerk and plastic parts assembler. AR 25-26. The VE testified that each of these jobs is listed as light work.[6] AR 64-65. If The VE eroded the number of cashier positions by 50% to accommodate a sit/stand option for a total of 650,000 jobs nationally. AR 64-65. The VE eroded the number of plastic parts assembler jobs by 50% to accommodate a sit/stand option for a total of 115,000 jobs nationally. The VE did not erode the number of jobs for the storage facility rental clerk position (114,000 jobs nationally) because "the work is generally performed most of the day in a seated position." AR 65. The number of jobs identified by the VE is sufficient. *Gutierrez v. Comm'r*, 740 F.3d 519, 528-29 (9th Cir. 2014). The VE explained that the sit/stand option is not covered by the DOT and that portion of her testimony was based on her 35 years' experience working with employers doing onsite job analysis and job descriptions. AR 67. The VE noted that, in California, cashiers generally have seating available. AR 68; *see generally Kilby v. CVS Pharmacy, Inc.*, 63 Cal. 4th 1 (2016) (describing seating law in California). The ALJ could reasonably rely on this testimony. An ALJ is "entitled to rely on the expert's 'experience in job placement' to account for 'a particular job's requirements.'" *Gutierrez v. Colvin*, 844 F.3d 804, 809 (9th Cir. 2016) (citation omitted); *see Avilez v. Berryhill*, 677 Fed. Appx. 373, 374 (9th Cir. 2017) (finding ALJ properly relied on VE's uncontradicted opinion based on 20 years' experience and explanation to support any deviation from DOT).

---

[6] If Plaintiff were limited to lifting/carrying/pushing/pulling 10 pounds, the VE would eliminate the cashier and storage facility rental clerk jobs. AR 65-66. The VE would not eliminate the plastic parts assembler position because it generally involves tubing or other items that do not weigh more than 10 pounds. AR 66.

Plaintiff cites to a Department of Labor, Bureau of Labor Statistics, Beta Labs online publication that purportedly states that almost 95% of cashier jobs do not allow for a sit/stand option. (JS at 20.) Plaintiff did not provide a copy of the publication or the title, and the court was unable to retrieve it online using the citation provided. Plaintiff does not supply a declaration that establishes a foundation for this information.[7] To the extent Plaintiff implicitly asks the court to take judicial notice, Plaintiff's request for judicial notice is denied. Fed. R. Evid. 201. A court may judicially notice only "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Plaintiff's unauthenticated information in his brief does not fall within Rule 201(b). Plaintiff has not shown error.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

DATED: February 28, 2019

ALICIA G. ROSENBERG
United States Magistrate Judge

---

[7] The court was unable to locate the statistics cited by Plaintiff. An information sheet for sales and related occupations, which including cashiers and other jobs, noted that 18% are sedentary and 36.8% are light work. https://www.bls.gov/ors/factsheet/orsprofiles.htm. In the absence of an expert declaration or other authenticated evidence, the court does not rely on internet searches.